# Beloud *v.* Sayre, Appellant.

*Practice, C. P.—Trial—Charge—Answers to points.*

1. A judgment will not be reversed because the trial judge refused all of defendant's points without reading them to the jury where it appears that all of the questions presented by the points were adequately covered by the charge.

*Negligence—Boroughs—Sidewalks—Defect in sidewalk—Independent contractor.*

2. Where a contractor who worked on a building abutting on a sidewalk leaves the sidewalk in a defective condition, and the borough takes no steps to have the sidewalk repaired, and two months thereafter a pedestrian is injured by reason of the defect, the borough will be liable for the injuries sustained.

Argued Nov. 19, 1913. Appeal, No. 200, Oct. T., 1913, by defendant, from judgment of C. P. Bradford Co., Feb. T., 1909, No. 132, on verdict for plaintiffs in case of G. F. Beloud and Eliza M. Beloud v. Sayre Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries.

At the trial the jury returned a verdict for G. F. Beloud for $300 and for Eliza Beloud for $350.

On a rule for a new trial and for judgment n. o. v. MAXWELL, P. J., filed the following opinion:

It appears that the Presbyterian church of Sayre, Pa., is the owner of a lot of ground on the east side of Elm avenue, in Sayre borough, this county, with a frontage of seventy-five feet. The sidewalk in front of this property was of large flagstone.

In the fall of 1907, the said church entered into a contract with one Jay M. Ashton, a contractor, to repair and rebuild this church building located upon this lot.

Early in October of 1907, the said J. M. Ashton, contractor, upon his own responsibility, and without obtaining any license or consent of the municipal authorities of Sayre borough, took up and removed two of the large flagstones from said walk on the east side of said street, at or near the south line of the said church lot, in order to enable the contractor to handle loads of materials, etc., over said walk, with teams and wagons in and out of said lot, during the course of repairs and construction of said church building.

This work of repairing the church was commenced by the contractor, and the flagstones from said walk removed, early in October, 1907, and the walk continued in that condition, until the accident to the plaintiff, on the evening of December 3, 1907, at between the hours of six and seven o'clock.

The plaintiff claims, that at the time of the accident, there were frozen ruts in this sidewalk, where the flagstones had been removed, leading across the sidewalk made by the wagon wheels, in drawing heavy loads over the same, so that the walk at this point was uneven, full of ruts and rough. Some of the wagon tracks or depressions across the walk, were from two and a quarter to two and a half inches in depth, and towards the outside of the walk, and next to the street, the wagon tracks were from four to five inches in depth, or below the surface of the stone walk, upon either side of this

crossing, and between the wagon tracks, the ground was rough and uneven.

There was building material piled up on either side of said walk, to a height of three to three and one-half feet above the walk. That the weather, at the time, was cold, ground frozen, and some slight snow had fallen, covering the ground, and that in places, the walk was slippery and icy.

This was a street and sidewalk, much used by the people of Sayre. Mrs. Beloud claimed that she had been west, visiting during the fall, and returned home about November 15, 1907.

That she commenced helping her husband, at his store, on the Monday previous to the accident, and in going to the store traveled this street, passing over along the west side, on the morning of the accident. She noticed the work being done at the church, as she passed on the opposite side of the street, going to her husband's place of business, saw the building material piled up there, but did not notice the driveway, into the church lot.

On the evening in question, she started from her husband's place of business for her home, between six and seven o'clock P. M. The evening was dark, saw no lights at the point of accident, and there was nothing to warn, or to give her any notice of the change in the walk. That she was walking along in the usual way, and when she reached this point, her foot while passing over this place, slipped, or went into a hole in the walk where these flagtones had previously been removed, and she lost her balance and fell upon the ground, sustaining injuries.

The negligence of the municipality complained of by the plaintiff was in permitting this sidewalk to be used by the public, generally, from early in October to December 3, 1907, a period of some two months, with these flagstones removed, thereby destroying the uniform and even surface of the sidewalk, and permitting these ruts

and uneven condition of the frozen ground to exist and continue for such a length of time, thereby rendering the sidewalk dangerous and unsafe to the traveling public, without some warning signals or notice to the public, calling their attention to this condition and change in the sidewalk.

The defense rested its case upon three grounds.

1. That while the flagstones had been removed by J. M. Ashton, the contractor for the church, that the place had been filled up and kept filled up with dirt or gravel, so as to make the walk reasonably safe, and that there were no ruts or holes in said walk at the time of the accident, and that there were three red lights displayed at or near the north line of the church lot, where a sewer pipe was being laid for the church, some thirty-six feet north from where the flagstones had been removed. These lights were located along the sewer ditch, one light on the street at or near the street railway tracks, another light, halfway between the sidewalk, and the first light, and the third light, at or near the outside of the sidewalk. That in addition to these lights, there was an arc light not far from the intersection of Elmer avenue, with Packer avenue, about 150 feet from the point of the accident, and elevated about twenty to twenty-five feet above the ground. Also an incandescent light at Park place and Elmer avenue, about 100 feet, or so, south from the point of accident, and while these lights were not put up by the contractor, yet they were sufficient, so that persons could well see the sidewalk and its condition, on the evening of the accident, providing they were using due care, under the circumstances.

2. That on this evening in question, the weather was cold and freezing, and that during the day or evening, it had rained, and that sleet had fallen, and the streets and sidewalks of the borough, including the point of accident, were all covered with ice and slippery, and that it was this icy and slippery condition, that was the

proximate cause of the accident to the plaintiff, and for which condition the borough was not responsible.

3. That even if the conditions in the sidewalk were as alleged by the plaintiff, and those conditions were the proximate cause of the accident to Mrs. Beloud, then the borough of Sayre would not be responsible therefor, for the reason that the party who changed the sidewalk and created the conditions complained of, was an independent contractor, for whose negligence the borough was not responsible.

We submitted to the jury under proper instructions, the questions raised by the pleadings and testimony, with the exception of that part of the defense which interposed the question of the negligence of J. M. Ashton, independent contractor, as a complete bar to the plaintiff's right of recovery, we reserved this question for future consideration.

The verdict of the jury, under the charge of the court, implies a finding, that the defect in the sidewalk had existed for such a length of time as to give the officials of the borough constructive notice of it, and this finding was fully warranted by the evidence, as it existed, from the forepart of October to the date of the accident. In this connection, we instructed the jury that there was no evidence of express notice to the officials of the borough.

The verdict also establishes that there was no negligence on the part of Mrs. Beloud that contributed to the accident.

It was conceded that the place where the accident occurred, was on one of the main public sidewalks of the borough of Sayre.

It is not disputed that J. M. Ashton's contract with the church was lawful and legal, and that he was an independent contractor, so far as the church was concerned. This we assume, in the disposition of this motion.

It is conceded that Ashton and his employees, in the

course of their work in rebuilding the church, removed the flagstones from this walk, hauled the loads over the walk that made the ruts, etc. Also piled the building material on either side of the stone walk, and as alleged by the plaintiffs did not take the necessary precaution to protect the place, or to warn the people using the sidewalk, of the change and danger, and this condition existed from early in October to the date of the accident, on December 3, 1907.

The evidence in the case does not disclose any building permit having been issued by the borough authorities, permitting the removal of the flagstones, and the occupying of any portion of the walk for piling building material upon.

An abutting property owner in Pennsylvania is by necessity, allowed to occupy temporarily, a portion of the public street in front of his or her premises for building purposes, for a reasonable time, and to a limited extent, if his or her obstructions do not impede or interfere with travel: Smith v. Simmons, 103 Pa. 32. But a permit or license from the municipality should be obtained for this purpose.

"When a license is granted by the municipality, the rule of responsibility and relation of the borough and builder is to be analogous to that of the independent contractor:" 5 Thompson on Negligence, sec. 805.

"In digging the sewer ditch without the written permission of the street commissioner he was a trespasser, and if his work rendered the street unsafe for ordinary travel it was the duty of the borough authorities, having actual or constructive notice of the dangerous condition created by him, to take proper measures to protect the public against it. In other words, a municipality cannot tolerate unlawful and dangerous obstructions on its streets and claim exemption from liability for injuries caused by them.

"The cases cited to sustain the borough's contention that it is not liable to the plaintiff for the injury she

received in consequence of the work done by Rausch, are not applicable to the facts of this case. They are cases in which the work was done under a contract with or license from the municipality, while in this case the work was done without its permission and in violation of its laws. We see no occasion, and we are not disposed, to go a hair's breadth beyond them in relaxing the supervision by a municipality of the streets within it:" Boyle v. Hazleton Boro., 171 Pa. 167. (Opinion of Justice McCollum, p. 176.)

Whether the defendant borough has an ordinance which requires a building permit, we are not informed by any evidence in this case, but this we regard as immaterial.

"It is now stated at the argument of this motion that there is no evidence in South Bethlehem which requires a building permit. A failure on the part of the borough, to regulate and restrict, for protection of the public, the temporary occupancy of its highways for necessary purposes seems to me, will enlarge, not diminish its responsibility; that it cannot then be exempt at any time from proper supervision, and will not be relieved from any kind of negligence by the builder of which it has actual or constructive notice. This rule does not impair his fundamental right of occupation, without being treated as maintaining a nuisance:" Rech v. South Bethlehem Boro., 10 Northampton County, 233.

"When the temporary occupation of the road by a person engaged in building is necessary, due care must be taken to guard the public from the danger; and if this be left undone, the corporation is answerable for an injury occasioned by the obstruction, if sufficient time had elapsed for the corporation by reasonable vigilance to have discovered the obstruction and provided a safeguard:" Born v. Plank Road Co., 12 W. N. C. 283.

"When ignorance of the defect is the result of omis-

sion of duty, actual knowledge of this existence is not an essential to the fixing of such liability.

"If the exercise of proper supervision would have led to discovery by the municipality in time to remove it, or to protect the public against it, there is the same liability for an injury caused by the nuisance as if there had been notice or knowledge of it:" Norristown Boro. v. Moyer, 67 Pa. 355; Erie v. Schwingle, 22 Pa. 384.

This case is not one in which the borough of Sayre had surrendered its control temporarily of the sidewalk in question, during these repairs, by the issuing of a building permit or license to J. M. Ashton, contractor, or to the Presbyterian church, neither is it a case where the borough had surrendered control of the sidewalk to an independent contractor, to do the work or make repairs on the sidewalk, for the borough or municipality. The jury has found by its verdict, that the conditions complained of by the plaintiff, as to the walk in question, was such that it was dangerous or not reasonably safe for travel, and that the plaintiff was injured thereby, without contributory negligence on her part, and that the borough authorities had constructive notice of its unsafe condition, and neglected to close up the sidewalk, but permitted the public to use the same during the repairs, without maintaining the same in a reasonably safe condition, and for this neglect of the borough, it was undoubtedly liable.

"A municipality is not liable for the negligence of an independent contractor while engaged in the construction or repair of a street of which he has the exclusive control or charge, but to relieve the municipality from liability in such cases, the accident must be the result of the negligence of the contractor, and, he must have such exclusive control of the street where the accident occurs as to authorize him to prohibit the use of it by the public.

"Whenever a municipality directs a street to be kept open and thereby invites the public to use it, an obliga-

tion is imposed on the municipality to see that it is maintained in a reasonably safe condition for travel:" Norbeck v. Phila., 224 Pa. 30.

In the case at bar, the public were permitted to use the sidewalk in question without any effort or attempt upon the part of the contractor for the Presbyterian church, to guard the same, and the jury has found that this condition existed for a sufficient length of time to bring home to the municipality constructive notice of the situation, and in view of that finding, it seems to us that an obligation was imposed upon the municipality to see that this sidewalk was maintained in a reasonably safe condition for travel, and that for its neglect to perform this duty, it seems to us, the municipality is liable in this case.

In the case of Charles E. Johnson Co. v. Phila., 236 Pa. 510, Justice ELKIN, in delivering the opinion of the court in that case uses the following language (p. 514): "A municipality is not always relieved from liability for injuries resulting from the work of an independent contractor in repairing its streets. If, at the time of the commission of the negligent acts complained of, the contractor did not have the exclusive control of the street, with the authority to prohibit the use of it by the public, the city may be liable for failure to perform its duty in exercising proper care in the supervision and control of that street as a public highway. If, as we understand the facts in the present case, the city required the street to be kept open for use by the public while the repairs were being made, the duty rested upon it to maintain the street in a reasonable safe condition for every purpose of a public highway."

If the city would be liable under the above facts, it appears to us that the city or municipality would still be liable when the conditions created in the street were made by an independent contractor working for an abutting property owner, who had no permission or license from the municipality to change or occupy the

sidewalk, and these conditions have existed for such a length of time that the city or municipality was affected with constructive notice, and failed to either close up the street or guard the same, we think the same liability would attach.

We therefore think that the points submitted by the defendant upon the trial of the case in court could not be affirmed by the court, for the reason that they all called for binding instructions in favor of the defendant. Therefore, we do not discover any reasons filed why a new trial should be granted in this case.

And now, to wit: June 16, 1913, the rule granted in this case, on September 24, 1912, to show cause why the verdict of the jury shall not be set aside and a new trial granted, is hereby discharged. Also the rule granted September 24, 1912, in this case, to show cause why judgment should not be entered for the defendant non obstante veredicto, upon the point reserved by the court, is also hereby discharged, and the prothonotary is hereby directed to enter judgment for the plaintiffs upon the verdict of the jury in the above case, for the amount of the verdict, with interest and costs, upon payment by the plaintiffs of the jury fee.

*Errors assigned* among others were (1–5) in refusing defendant's points without reading them to the jury; (6) in refusing judgment for defendant n. o. v.

*E. M. Dunham,* with him *Chas. C. Yocum,* for appellant, cited: Allen v. Willard, 57 Pa. 374; Smith v. Simmons, 103 Pa. 32; Painter v. Pittsburg, 46 Pa. 213; Ardesco Oil Co. v. Gilson, 63 Pa. 146; Reed v. Allegheny, 79 Pa. 300; Wray v. Evans, 80 Pa. 102; Erie v. Caulkins, 85 Pa. 247; Erie School District v. Fuess, 98 Pa. 600; Harrison v. Collins, 86 Pa. 153; Edmundson v. R. R. Co., 111 Pa. 316; Lohr v. Phillipsburg Boro., 156 Pa. 246; Duncan v. Philadelphia, 173 Pa. 550; Dutton v. Lansdowne, 198 Pa. 563.

*W. G. Schrier,* of *Mills & Schrier,* with him *A. L. Laws* and *Lilley & Wilson,* for appellees, cited: Goff v. Philadelphia, 214 Pa. 172; McLaughlin v. Kelly, 230 Pa. 251; Mosier v. East Stroudsburg Boro., 53 Pa. Superior Ct. 377; Miller v. Lancaster, 30 Lanc. Law. Rev. 94; Nudd v. Lansdowne Boro., 190 Pa. 89.

OPINION BY ORLADY, J., February 20, 1914:

The assignments of error challenge the disposition made of the points for charge which were presented by the defendant—all of which were refused without reading them to the jury. "It has been repeatedly held that a judge is not bound to adopt the language of the points, but may choose his own form of expression, and if he expresses the law fully and with substantial accuracy nothing further is necessary. The judge's charge is not made to a technical and critical audience, scanning closely every phrase capable of a construction which would be error, but is addressed to a jury of plain men of various ages, education, intelligence, and experience, and is intended to inform them as to the law, and to guide them in its application to the facts as they may find them from the evidence. Having given them one plain, full and adequate statement of the law, it need not do more." This is the language of our Supreme Court in Commonwealth v. Lewis, 222 Pa. 302. Every question raised by the appellant in this case, is adequately and convincingly answered in the opinion of the trial judge (MAXWELL, J.), in refusing a new trial, and to enter a judgment non obstante veredicto.

The judgment is affirmed.