## Smith, Appellant, *v*. Henry.

*Waters—Diversion of waters—Laying pipe on highway—Supervisors—Res adjudicata.*

In an action to recover damages for injuries to land from the diversion of water alleged to have been caused by the improper construction of the pipes along a highway, a verdict and judgment for the defendant will be sustained where it appears that the defendant laid the pipe in question under an order of court; that after the pipe had been laid damages did not occur until three months thereafter; that during this time, the supervisors were in control of the highway; that they ratified and approved the acts of the defendant; and that the plaintiff had previously brought an action against the township for the same injuries, and that this action had resulted in a verdict and judgment against the plaintiff.

In such a case the plaintiff's right of action was against either the township or the wrongdoer. The acts of the township authorities included their own omission as well as defendant's acts. The parties were not liable as joint and several tort feasors. The judgment in the action against the township was therefore conclusive on the facts in the action against the defendant.

Argued Oct. 24, 1916. Appeal, No. 192, Oct. T., 1916, by plaintiff, from judgment of C. P. Blair Co., March T., 1916, No. 333, on verdict for defendants in case of Albert M. Smith v. J. Luden Henry and Samuel C. Tussey. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Trespass to recover damages for injuries to land alleged to have been caused by the improper construction of a pipe along a highway. Before SEARLE, P. J., specially presiding.

From the record it appeared that on June 17, 1909, Samuel C. Tussey, filed a bill in equity against Albert Smith and two other persons, all three being supervisors of Blair Township, and Amos Birch, roadmaster, to restrain the defendants from constructing a ditch along a public highway in such a way as to cause water to flow

on plaintiff's land where it did not flow before. In this proceeding the court entered an order as follows: "And now December 20, 1909, it is hereby ordered, adjudged and decreed that J. Luden Henry is hereby appointed to repair the road at the point in question by lands of S. C. Tussey, in such way that the water will flow in the way it was wont to flow prior to filing the bill of the plaintiff in the above proceeding. The said work to be done under Mr. Henry's supervision, and at the cost of Albert M. Smith, one of the defendants." Henry proceeded with the work, and laid a pipe along the road in February, 1912. The damages which were alleged to have been caused by laying the pipe occurred in April or May following. During the interval the supervisors were in control of the road, and the evidence tended to show that they had approved and ratified the acts of Henry. Subsequently in 1911 Albert M. Smith brought an action of trespass against the township for the alleged damage resulting from the laying of the pipe. The suit resulted in a verdict and judgment in favor of the township.

The court charged in part as follows:

["They claim J. Luden Henry was acting under the authority of the court, and you will see that, before this action took place, Judge BELL did appoint J. Luden Henry, there being some trouble among the supervisors, and the plaintiff in this case being one of the supervisors, Judge BELL did appoint J. Luden Henry to act, and assume the function of the board of supervisors of the township in repairing this road, and he was directed by the order of the court so to repair the road, that the water would flow where it was wont to flow—that would be down the natural water course. Now, Mr. Henry, acting under the order of the court, and assuming practically the duties of a supervisor, went out and put in this pipe. Mr. Henry would have practically the same authority as a supervisor would have; he would have to substantially comply with the order of the court. The public roads of a township are subject to the control of

the supervisors. This authority is expressly given by the general road law of June 13, 1836, P. L. 551. They are required to keep the road in good condition, and clear of all impediments of easy and convenient travel. The thirty-third section gives them power to enter upon such land where the public road is located, to keep open, maintain, and repair all such ditches and drains to the same as they shall judge necessary to keep the water from the road. So you see, gentlemen, that the supervisors have great authority in making ditches and drains, and, unless that authority is abused, when they are acting honestly, and in the conscientious pursuit of their duties, they are not liable in law, unless they abuse the duties they have, and the authority to make drains and ditches. Mr. Henry went there practically as a supervisor. He states how he put in this drain, and we know of no evidence which will show that that drain was put in properly."] (27)

["What negligent act did Mr. Henry do? You have heard him upon the stand. You have seen his manner of testifying. What wrongful act did he do? He put this drain about ten feet, and then left ten feet between the end of the drain and the easement of the plaintiff—this right of way. He also contends it was placed in a natural watercourse; and as we said, about the watercourse, it was determined by Judge BELL, and you would have been upon the ground and seen. Where would the watercourse go if there was no road at all? You have been on the ground; you have heard the evidence of a large number of witnesses where the natural watercourse would be. I think they all testified, if there were no road there, the water would all go down about the place where this pipe is now placed. Was that pipe placed in the natural watercourse? That is the one thing for you to decide. If Mr. Henry placed that pipe in the natural watercourse, and the amount of water, which would naturally go down there, went through that pipe, then, gentlemen, the plaintiff cannot recover in this case.

"Plaintiff seems to complain that he did not carry this pipe across this easement, and into this ditch. He was not bound to do that in the exercise of his authority. He would have the same authority as a supervisor. A supervisor would not be bound to do this, if the water, coming out of the old pipe, went down to the breaker, and across to the ditch, he would have the same right. He was not obliged to run the pipe over the road of this plaintiff, and into this ditch; if he made that culvert in a proper manner, and was guilty of no negligence in so doing, and placed it in the natural watercourse, then there can be no recovery in this case."]   (28)

["But the defendants go further, and say that this act was accepted by the supervisors—this act of J. Luden Henry was accepted by the supervisors, and that, after this acceptance, a suit was brought against them for the very same injury. Gentlemen, the three supervisors have been upon the stand, and they have testified, as we recollect, that they did accept this road, that they ratified the acts of Mr. Henry, that they considered that this pipe was put in the natural watercourse, where they would put it, and they approved his acts, and, therefore, the acts of Mr. Henry became the acts of the supervisors. If they determined to maintain that, and that ratification, as they allege, was done before this suit was brought —if you believe those supervisors, gentlemen, and they are uncontradicted, then there would be no recovery in this case, because of the fact that a suit was brought against these supervisors for this very action, and Judge Evans decided that it could not be maintained. So, gentlemen, if you should find that the supervisors, before that suit was brought, and I say the evidence is uncontradicted—if you believe these three men, why then you would have to find a verdict for the defendant in this case."]   (29)

Verdict and judgment for defendant. Plaintiff appealed.

*Errors assigned,* among others, were (27-29) above instructions quoting them and (46) refusal of binding instructions for plaintiff.

*John M. Snyder* and *Thos. H. Greevy,* for appellant.

*B. F. Warfel,* with him *W. I. Woodcock,* for appellees.

OPINION BY KEPHART, J., March 7, 1917 :

The present action is the outcome of a series of actions wherein adjoining landowners contend over the flow of surface water.

In Tussey v. Clark, 45 Pa. Superior Ct. 433, where some of the facts on which this case rests were under consideration, this court, in speaking of the order of the court below, which followed the grant of a preliminary injunction, said: "The order referred to was clearly a mandatory order and issued without any sort of authority on the state of the record then existing." In that proceeding the present appellant as a supervisor was enjoined from constructing a ditch along the public road. The appellant, disregarding the restraining order, continued the work; an attachment was asked for and at the conclusion of the hearing the court below made the order referred to. In it J. Luden Henry was appointed to repair the road so that the water would flow "in the way it was wont to flow prior to the filing of the bill." Henry complied with the order by placing a large pipe underneath the road and then endeavored, in the same proceeding, to collect the cost thereof from this appellant. In disposing of that question Judge HENDERSON, in Tussey v. Clark, supra, made the statement referred to. This court did not pass on the court's authority to make such an order in a proper case, nor did it express any opinion as to the protection that would be afforded the court's officer acting under and executing the order, nor did it preclude the appellees in any subsequent ac-

tion from showing the existence of a culvert at the point where the new pipe had been placed.

The present case was carefully tried by able counsel. It continued over two days, considerable testimony was taken, the jury had the advantage of a view of the premises, and were carefully instructed by the trial judge on each question raised. Forty-eight assignments of error are presented for our consideration. They need not be discussed in detail. The learned trial judge submitted the case to the jury to determine whether Henry, in complying with the order of the court, wrongfully diverted more water than would naturally flow towards plaintiff's easement, the right of way, or if the pipe was placed in a natural water course.

When the appellant's predecessor in title was granted this easement of right of way from his farm to the public road, he had the right, and it was his duty, to take such care of it as would carry the waters flowing naturally across the way to the ditch or ravine below. For this purpose he could have entered on defendant Tussey's ground and made a ditch that would have prevented further trouble. It appeared in the evidence that on one of the former suits this right was expressly conceded. There was evidence that the pipe was placed in "the lowest part of the ravine or road" where the accumulations from the upper side of the road would and did naturally flow. The lane or right of way for a short distance paralleled the public road and at the point where the pipe was placed under the road it was but a few feet away. It was an easy matter for the appellant at a small cost to have taken care of this water by a culvert similar to the one on the road or by breakers along his right of way. Where the officers turn water from a road, in a suitable place and along a grade or course over which it naturally flows, the township is not liable for the consequences of such an exercise of discretion, nor would any one acting for them under an

order of the court. It must be made to appear that the plan adopted is unjustifiable and unreasonable.

The pipe was placed under the road in the latter part of February, and the damage was done in April or May following. During this time the supervisors were in control of the highway. It is in evidence that the acts of Henry were ratified and approved by them. If Henry proceeded without authority, and was not protected as a court officer, because the court was without jurisdiction to make an order, these acts of the township officers would fix on the township liability. It was after Henry had departed, and before the damage was done, that the township authorities knew of Henry's acts. If Henry had violated his instructions by not causing the water to flow "where it was wont to flow," or as a trespasser he committed the acts complained of, the township then would be liable therefor. If his work on the public highway rendered the adjoining properties unsafe or unlawfully damaged them, it was the duty of the township authorities, knowing of it, to take proper measures to protect them. The township could not tolerate unlawful excavations or ditches in its highways if the water culvert was such, and claim exemption from liability for injuries caused merely because the work had been done by another. Thus it has been held that a person opening a street under an invalid permit was a trespasser and if his work made the street unsafe for travel, it was the duty of the borough authorities, having notice, to take proper measures to protect the public against it. If they did not, and injuries resulted, they were liable: Boyle v. Hazleton Boro., 171 Pa. 167; Beloud v. Sayre, 56 Pa. Superior Ct. 215. If damage had immediately arisen, his liability, acting as a trespasser, would have preceded the liability of the supervisors. They were required to have notice. It is unquestionably the law, where one negligently interferes with a highway, he is at once liable to a party injured from the moment the injury takes place. But taking the case in its strongest aspect for the appellant, his right of action, under the

facts, was against either the township or the wrongdoer. The acts of the township authorities included their own omission as well as Henry's acts. Plaintiff made an election as to which he would sue: Brookville Boro. v. Arthurs, 130 Pa. 501; Brookville Boro. v. Arthurs, 152 Pa. 334. He brought an action against the township in 1911 for this identical damage. A verdict was recovered against the appellant upon which a judgment was entered. The appellees contend that this action was res adjudicata. The parties were not liable as joint and several tort feasors. The judgment in the action against the township would be conclusive on the facts in this case: Gates v. Pennsylvania Railroad, 150 Pa. 50; Fowler v. Jersey Shore Boro., 17 Pa. Superior Ct. 366; Burrell Twp. v. Uncapher, 117 Pa. 353-362.

The court below, however, permitted the jury to find when the ratification and approval took place. The evidence showed that it was in 1910 or 1911 and the court held that if it was before the action against the township was instituted, the appellant could not recover. The court could have gone further and held that the act of the township officers, with full knowledge of the pipe's existence, the manner of its construction and its relation to adjoining lands since the February before the injury occurred, amounted to an adoption of Henry's acts.

The supervisors are empowered to cut open, maintain and repair drains and ditches through adjoining lands as they deem necessary to carry the water from the road. They are also empowered to build culverts, ditches and breakers in highways. The supervisors of the township have control of the public roads; they are required to keep the roads free from all impediments to easy and convenient travel: Hall v. Rine, 60 Pa. Superior Ct. 401-405. "Where there are no streams and no defined water courses, but the flow is over the surface of a field or fields, a large discretion is vested in supervisors as to the most practical and efficient method of disposing of water, to the end that the roadbed may be protected

from washing": Hall v. Rine, supra.   The learned judge declined to hold that every act of Henry's was protected by the order of the court.   He found that the work was properly done but charged the jury that if Henry, by that work, wrongfully diverted the water, the plaintiff could recover.   He was held to a reasonable compliance of the court's order.   To this extent, there is no doubt that, as he was the court's officer, he was protected by its order.

We are not able to say what bearing the equity case between the appellant and the plank road company in 1902 had in the present controversy.   The record of that case, though offered in evidence, is not printed in the paper books.   If it influenced or controlled the subject-matter in controversy it was certainly admissible.   If the present township took over or became charged with the care of an abandoned turnpike, then, inasmuch as Henry was acting in the capacity of a supervisor (or if he was acting as a trespasser, his acts being adopted by the township) this record would certainly be competent evidence to show the disposition of the same question here raised in that action.   The assignments of error which complain of the admission of this and other records are not self-sustaining.   Considering them on their merits, the cross-examination on this record, and the admission of this and other records in evidence, was proper to a clear understanding of the case.

The charge of the court was free from any error prejudicial to the plaintiff.   The case was well tried, and the judgment is affirmed.