Malone et ux. *v.* Union Paving Co. et al.
(Phila. et al., Appellants).

Argued November 30, 1931.   Before Frazer, C. J.,
Walling, Simpson, Kephart, Schaffer, Maxey and
Drew, JJ.

*Augustus Trask Ashton,* City Solicitor, with him *I. G. Gordon Forster* and *G. Coe Farrier,* Assistant City Solicitors, for appellant.—The record is devoid of evidence from which inference could be drawn that the City of Philadelphia had any prior notice of the existence of a danger in the temporary crossing maintained by the Philadelphia Rapid Transit Company at the point of the accident and judgment n. o. v. should have been entered in the court below in favor of the City of Philadelphia: Dress v. Harrisburg, 287 Pa. 157; Roop v. Phila., 266 Pa. 353; Swan v. Indiana Boro., 242 Pa. 596; Rogers v. Williamsport, 199 Pa. 450; Landis v. Phila., 295 Pa. 227.

Where there is an accident the mere happening of the accident does not raise any presumption of negligence. In a case such as this res ipsa loquitur does not apply: Bryan v. Barber Asphalt Co., 289 Pa. 123; Vendig v. Union League, 291 Pa. 536.

The sci. fa. defendant was primarily liable to the plaintiff in this case and the municipality defendant was

secondarily liable for the proper maintenance of the crossing: Vinnacombe v. Phila., 297 Pa. 564.

The power of the court to mould verdicts cannot be questioned: Parks v. Bishop, 296 Pa. 91; Standard Sewing Machine v. Royal Ins. Co., 201 Pa. 645; Com. v. Micuso, 273 Pa. 474; Com. v. Miller & Burke, 77 Pa. Superior Ct. 469; Columbia Glass Co. v. Glass Co., 43 Pa. Superior Ct. 367.

*David I. Scanlon,* with him *Bernard J. O'Connell,* for Philadelphia Rapid Transit Company in No. 390.—Under the evidence judgment n. o. v. should be entered for Philadelphia Rapid Transit Co., added defendant: Bryan v. Asphalt Co., 289 Pa. 123; Kahn v. Light Co., 238 Pa. 70; Lohr v. Boro., 165 Pa. 109; Dress v. Harrisburg, 287 Pa. 157.

In any event Philadelphia Rapid Transit Co. (additional defendant) is entitled to judgment n. o. v. in its favor: Vinnacombe v. Phila., 297 Pa. 564.

*Otto Kraus, Jr.,* with him *William Charles Brown,* for appellees.—Where a cartway is being repaired and a municipality directs that a crossway be kept open for pedestrians, the municipality is bound to see that it is in reasonably safe condition for ordinary travel: Caldwell v. Trust Co., 291 Pa. 35; Vendig v. Union League, 291 Pa. 536; Mickey v. Twp., 96 Pa. Superior Ct. 437; Reichard v. Boro., 286 Pa. 25; Scott v. Erie, 297 Pa. 344; Johnson v. Phila., 236 Pa. 510; Gormley v. Paving Co., 95 Pa. Superior Ct. 78.

Moreover, there is no positive testimony that, after the directions as to the doing of the work were given, any test was made on behalf of the city or the Philadelphia Rapid Transit to determine whether possible tilting had been obviated. The question therefore arises can the city escape liability because it directed some one else to perform its duty of making the particular crossway safe, who would be secondarily liable to

it: Fleming v. Boro., 223 Pa. 295; Norbeck v. Phila., 224 Pa. 30; Sakach v. Antonopolos, 298 Pa. 130; Reardon v. Smith, 298 Pa. 554; Morris v. Electric Co., 278 Pa. 361.

OPINION BY MR. JUSTICE SIMPSON, January 5, 1932:

This is a very unsatisfactory record. Plaintiffs, who are husband and wife, sued the Union Paving Company and the City of Philadelphia, to recover damages for injuries the wife sustained by reason of the alleged defective condition of a temporary foot crossing over the cartway of one of the city's streets. The city, alleging that the crossing had been constructed by or for the Philadelphia Rapid Transit Company, caused a scire facias to be issued against it, as an additional defendant, in the way provided by the Act of April 10, 1929, P. L. 479. The defendants and additional defendant each denied that the crossing was dangerous; the paving company and the transit company each denied that it did the work at the crossing; and the city denied that it was liable even if the crossing had been defectively constructed and the wife injured by reason thereof.

The verdict was: "Verdict against the City of Philadelphia with recovery from the Philadelphia Rapid Transit Company: $1,641 for Mr. Malone. Verdict for $3,000 for Mrs. Malone [hereinafter called the plaintiff] against the City of Philadelphia with recovery against the Philadelphia Rapid·Transit Company." This verdict, as respects the "recovery against the Philadelphia Rapid Transit Company," was, upon petition, properly moulded so as to read: "Verdict for the City of Philadelphia, defendant, against the Philadelphia Rapid Transit Company, additional defendant, for the sum of $4,641." There was no verdict rendered either for or against the Union Paving Company, and it sought, by petition, to have added to the verdict the words: "Verdict for the Union Paving Company." The court below has not acted upon this petition. If both the transit

company and the paving company are and continue to be financially responsible, it is a matter of little moment to the city which is held primarily liable, since the municipality is, at most, only secondarily liable in either event (Brobston v. Darby Boro., 290 Pa. 331), and the court will so control proceedings on the judgment as to enforce the respective rights of the parties inter se: Goldman v. Mitchell-Fletcher Co., 292 Pa. 354.

Plaintiff's story of the accident, as told by herself, is that, while walking along Columbia Avenue, in broad daylight, on a clear day, she started to cross the cartway of 11th Street at the usual crossing for pedestrians. In the middle of the street at that point, was a trolley track operated by the transit company, the additional defendant. She saw that the street between the rails of the track had been excavated, and at the foot crossing had been filled in by railroad ties, running parallel with the rails. She says: "I went across to the track, and as I did I noticed that it looked all right to me to tramp on, or I would never have crossed, because I want to be sure of my footing. Then I stepped on the first tie, and as I stepped over on the other tie, the tie tilted......and I was thrown forward on my face," thus receiving the injuries of which she complains.

There is no evidence that the city constructed the temporary crossing or had actual notice of its defective condition, if it was defective. The municipality was not required to assume that a defect existed, or "to *seek* for defects...... The law only requires that it shall be vigilant to *observe* them when they become observable to an officer exercising reasonable supervision": Lohr v. Phillipsburg Boro., 156 Pa. 246, 249. That it was not observable in the instant case is evident from the fact that the plaintiff herself did not see it, though she says she carefully looked. If it was observable, and she chose to proceed notwithstanding, she was guilty of contributory negligence and cannot recover. If it was not observable to her, its condition was not such as to charge

the city with constructive notice, and hence no recovery could be had against it on that ground: Landis v. Phila., 295 Pa. 227. Moreover, if the city is to be held liable because of constructive notice of the defect, it is necessary to have proof that this had existed for a sufficient length of time to affect it with such notice.

Recognizing this situation, the trial judge charged the jury as follows: "if there is a defect in a highway,...... before there can be a liability on the part of the city ......the defect must have existed......a sufficient length of time to have given notice to the city of its existence. There is no evidence in the case that if there was a defect in this crossing it had existed any length of time prior to August 18, 1927, [the date of the accident]......I repeat: the plaintiff, on whom the burden of proof rests to prove notice, has failed to offer any evidence to show the length of time, if there was a defective condition, that it had existed prior to the accident, in order to bring notice home to the city." As the alleged defect was a hidden one, the statement that the evidence was not sufficient to charge the city with constructive notice was clearly correct, and, there having been neither averment nor proof of actual notice, there should, of course, if the case is to be viewed from the standpoint of constructive notice alone, have been an instructed verdict in the city's favor. But instead of so charging the jury, the trial judge refused the city's point for binding instructions, and the jury rendered a verdict against it, on which the court in banc entered the judgment which is the subject of this appeal.

Plaintiff avers, however, that the evidence discloses another reason why the verdict against the city should be sustained, viz., that in the contract between the paving company and the city, in relation to the paving of 11th Street, it was expressly provided that the paving company should keep the crossings open for public travel, and that this makes the city liable for any injury resulting from the negligence of the paving com-

pany in constructing and maintaining such crossings. For this contention plaintiff relies on Norbeck v. Phila., 224 Pa. 30; Reichard v. Bangor Boro., 286 Pa. 25, and Scott v. Erie City, 297 Pa. 344. The present case was not submitted to the jury from this standpoint, however, and hence their verdict does not establish anything in regard to it. Moreover, there is at least one important distinction between those cases and this, the effect of which can be considered and determined during and after the retrial which we shall order. This distinction is that in each of the cases cited, the defect for which the municipality was held liable was plainly observable, while here the fact is otherwise. On their facts, therefore, those cases hold only that, where such a contract exists, and the contractor fails to keep the streets safe for travel, the municipality will be held liable for damages resulting from a visible defect even though such a time had not elapsed as would affect her with constructive notice thereof. It seems unreasonable, however, to hold a city responsible for the faults of an independent contractor, where they were not and could not have become known to her without tearing up the work done by the contractor. In fact, the fault here was one against which the city tried to protect the public, for her officer warned the employees of the contractor at that point to be careful so to bed the tie which tilted that tilting could not occur, and she had no notice that her warning had not been heeded.

There is, or may be, another answer to this contention of plaintiff, the facts respecting which were not satisfactorily developed at the trial. Columbia Avenue and 11th Street cross each other at right angles, the former running in an eastwardly and westwardly direction, and the latter in a northwardly and southwardly direction. Plaintiff was walking on the southerly sidewalk of Columbia Avenue eastwardly towards 11th Street, and when she reached it and attempted to cross over, was injured at the temporary crossing over the transit com-

pany's car track in the middle of that street. At this time the Union Paving Company, in fulfilling a contract with the city, was repaving 11th Street from the north houseline of Girard Avenue to the south houseline of Columbia Avenue. The temporary crossing which plaintiff was using was north of the south houseline of Columbia Avenue and hence was not within the termini stated in that contract; but plaintiff alleges that the work actually done by the paving company extended north of the northernmost limit mentioned in the contract, and in fact reached to and beyond the temporary crossing where she was injured. If this is so, possibly the city would not be liable, since at that time it had given no authority to the paving company to extend its work even as far as the temporary crossing, and hence the language of the contract, relied on by plaintiff, did not apply to the place where the accident happened.

At the same time the paving was being done, the transit company, for purposes of its own, was doing work between the rails of its track, and there was testimony to show that the excavation and temporary foot crossing complained of was done, in pursuance of that purpose, under some arrangement between the transit company and the paving company, the latter laying the temporary crossing in the first instance, and the former maintaining it thereafter. What that arrangement was the evidence does not disclose, nor does it appear what connection, if any, the city had with this work.

We do not know whether the jury had a map or plan which enabled them to understand the complicated situation thus arising. If they did not, they must be excused for any mistake which they may have made; if they did, it has not been presented to us, nor has any other draft or plan been furnished us, despite the express requirement of Rule 44. We might of course quash the appeals for want thereof (Piper v. Queeney, 282 Pa. 135, 147) ; we always hesitate to do so, however, espe-

cially in a case like the present, but counsel will do well to remember—not only those engaged in this case, but all others—that patience may cease to be a virtue. Indeed, we have observed a growing disposition on the part of counsel to forget that there are such things as rules of court, although obvious self interest, as well as elementary courtesy to the court, calls for observance of its rules.

Upon a consideration of the whole case we have reached the conclusion that the court below should have granted a new trial, and, this being so, on the authority of section 2 of the Act of May 20, 1891, P. L. 101, (Act No. 76), we may, and in this case should, order the "verdict and judgment to be set aside and a new trial had."

We may add, moreover, that our study of this record convinces us that much of the testimony was not understood by the jury because they could not see that to which it related, and that many, if not most or all of them, did not clearly understand what they were asked to determine. Experience satisfies us that juries want to do right as between the litigants, and generally do so when they understand what they are to decide. We, therefore, suggest that, in cases of this character, a map or plan of the location,—sufficiently large to be readily seen by the court, the jury, the counsel and the witnesses, —be exhibited in plain sight of all of them; and that the testimony be taken with reference thereto, so that each piece of evidence may properly be fitted into the picture. We also suggest that it would be well for the trial judge to consider whether it would not be wise, in this and all other complicated cases of the same general character, where the jury is called upon to determine the relative rights of litigants, especially where if one defendant is liable another is not, or where one, if liable, may have a right of recovery over against another, that the jury, in addition to rendering a general verdict, be called upon to answer specifically definite questions submitted to

them, with leave to the court to mould the verdict in keeping with the answers returned.

The verdict and judgment in this case is set aside and a new trial is ordered.