Miller et al. *v.* Erie et al., Appellants.

Argued October 2, 1940.   Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Edward M. Murphy* and *J. B. Held,* with them *Henry R. Jeffs,* for appellants.

*Charles H. English,* with him *Frank B. Quinn* and *Raymond P. Leemhuis,* of *English, Quinn, Leemhuis & Tayntor,* for appellees.

OPINION BY MR. JUSTICE LINN, October 28, 1940:

The City of Erie, original defendant, and John Reinhold, Jr., added defendant, appeal from judgments on verdicts in favor of the minor plaintiff, Miller, and his parents, in an action to recover for injuries sustained when a pillar, part of a barrier across the cartway of a street, fell on the minor plaintiff. The barrier had been erected by Reinhold. The accident occurred in a section of the city which abuts on the bay lying much below the level of the street intersection of Bayview and Lincoln Avenues. Bayview Avenue extends east and west; Lincoln leads into Bayview from the south but does not cross it; both are paved to the intersection but Bayview is not improved for travel east of the intersection. Along the eastern boundary line of Lincoln Avenue and across the cartway of Bayview Avenue, where its improved surface ends, Reinhold erected two pillars, between which he hung two chains, each permanently fastened to a pillar at one end but, at the other, fastened only by a hook allowing the chains to be removed at will; unless removed they stopped vehicular traffic further east on Bayview Avenue. From a very short distance east of this barrier, the land slopes abruptly to the water level to which access is afforded from the top of the hill by a stairway of 137 steps.

Defendant, Reinhold, brought in by the City on scire facias, owns and resides on premises at the southeast corner of the intersection of Bayview and Lincoln Avenues. There is evidence that before the streets had reached their present improvement, the portion of Bayview Avenue east of Lincoln had been used as a "dump."[1] In 1927 defendant Reinhold had four members of the City Council come to the place and look over it; he obtained their permission, for what it was worth, to construct the pillars and chains across that portion of Bayview Avenue extending east of Lincoln and leading to the declivity. The pillars were of brick outside and concrete inside; they were twenty-five inches square, mortared on a granite base twenty-eight inches square and two feet above ground, and extending some distance underground. On the top was a six-inch limestone cap. The height above ground was about eight feet eleven inches. That part of the pillar above the granite base, without the cap, weighed about twenty-

---

[1] As showing the character of the neighborhood at that time, the evidence of one of the councilmen may be quoted. "A. Mr. Reinhold invited us out there to look at the condition where he would have to ask permission if he could put up those pillars so he could stop the people from coming in there and dumping ashes and rubbish and stuff. I didn't know it was a street, and we went down and looked at it, and Mr. Reinhold asked us about putting up pillars and putting chains across to keep the people from driving in there. Q. Did you investigate the roadway to the north of Mr. Reinhold's property at that time? A. To the north? Q. Yes. A. Yes, right from the end of the property, where it went down into the deep ravine down there. Q. Was there any discussion at that time as to whether there was any danger in the condition of the roadway as it then existed? . . . A. Why, there was no mention of a roadway, because there was no roadway there, there was no roadway there at that time. It was simply opened right up. There was no roadway or anything, and it was very close to the bank, in regard to safety, for anybody driving in there. Q. What might happen to people who drove on that street or that way, as it was at that time? A. Well, if they would get over too close, I imagine, there that they would go over the bank."

six hundred pounds. The chains were not tightly drawn, but sagged toward the center; the links were about one and a quarter inches long and the metal "maybe half or quarter inch" thick; the lower chain was fastened to the pillar about three feet from the ground and the upper about five feet. The distance between the pillars, according to the plan in evidence, was nearly twelve feet.

In June, 1938, the date of the injury, the minor plaintiff was fifteen years two months of age. He testified he was then in good health; weighed about 128 pounds; "was just finishing ninth grade" in the Strong Vincent High School with "average" standing; was track manager of the school's athletics and "went out for football." He had gone down the steps to the water level to find friends. Later, he ascended the stairs to the level of the streets with them, two aged fourteen, and one, fifteen. They sat on the top chain. He testified: ". . . and Jimmie went first to the chain and got on, and then Roger went and sat beside him, on his right, and then George went over while I was unlocking the bicycles and sat on Jimmie's left, then I came over and climbed on, on George's left, and just as I got nicely settled it fell." The witness, James Phillips, was fifteen years old, was in the eleventh grade in school, and weighed about 145 pounds. Roger Milloy gave his height as five feet ten and his weight as 135 pounds. Asked "Would it have been possible to swing very much on that chain?" he replied, "I think it would have been possible, but we are not babies, we don't play around such things." George Shapter was fourteen at the time and said he weighed 120 pounds. The weight of the four boys, given in the record as 528 pounds, pulled down that part of the northern pillar above the granite base so that it fell on the plaintiff.

Of the assignments of error, only one needs consideration: the refusal to enter judgments for the defendants notwithstanding the verdicts for the plaintiffs.

In his statement of claim, plaintiff alleges that the city maintained a nuisance in the highway and that the pillars were erected "in a negligent and careless manner," etc. The mere existence of a nuisance in a technical sense will not impose liability without also showing negligence constituting the legal cause of the harm for which recovery is sought: compare *Hendricks v. Pyramid M. F. Corp.*, 328 Pa. 570, 195 A. 907; *Dominices v. Monon. R. R. Co.*, 328 Pa. 203, 195 A. 747; *Leoni v. Reinhard*, 327 Pa. 391, 194 A. 490; *Bonczek v. Phila.*, 338 Pa. 484, 13 A. 2d 414. This is not the ordinary case of an obstruction placed in a highway or on a sidewalk into which one may drive or fall over or into. It was not an obstacle to pedestrian travel; there was an unobstructed paved footway[2] alongside, presumably the footway traversed by the plaintiff and his companions on their way from the top of the steps.

The standard of duty required of the city was stated in *Burns v. Bradford City*, 137 Pa. 361, 367, 20 A. 997, to be: "A municipal corporation is not an insurer against all defects in its highways, but it is answerable for negligence in the performance of its duties in the construction and care of them. For a defect arising in them, without its fault or neglect, it is not liable, unless it has express notice, or the defect be so notorious as to be evident to all passers. If a defect is such that it is discovered by only one of a thousand or more persons who pass it in the ordinary pursuit of business or pleasure, can it be said to be notorious, or such a defect as the municipality is bound to take notice of? We think not." In *Malone v. Union Paving Co.*, 306 Pa. 111, 116, 159 A. 21, we said: "The municipality was not required to assume that a defect existed, or 'to *seek* for defects. . . . The law only requires that it shall be vigilant to *observe* them when they became observable to an officer exercising reasonable supervi-

---

[2] Compare *Guilmartin v. Philadelphia*, 201 Pa. 518, 51 A. 312.

182

sion': *Lohr v. Philipsburg Borough,* 156 Pa. 246, 249, 27 A. 133." See also *Good v. Philadelphia,* 335 Pa. 13, 16, 6 A. 2d 101; *German v. McKeesport,* 137 Pa. Superior Ct. 41, 46, 8 A. 2d 437. The same rule applies with respect to defects resulting from unauthorized structures or conditions: see *Lawrence v. Scranton,* 284 Pa. 215, 222; 130 A. 428; *Boyle v. Hazleton,* 171 Pa. 167, 176, 33 A. 142; *Beloud v. Sayre,* 56 Pa. Superior Ct. 215, 221; *Smith v. Henry,* 66 Pa. Superior Ct. 538, 544.

The contention, on behalf of plaintiff, is that the barrier was defectively constructed and maintained in two respects: that the pillar was inadequately mortared to the granite base and that it was not doweled into the base. Did the city have notice of those defects? There is no evidence that either condition was observable by the passer-by. The barrier had been there eleven years. Mr. Corrier, who lived less than 200 feet away, and who was called by the plaintiff, seems to have examined it sufficiently to testify that the pillar which fell had been off-center from one-half to five-eighths of an inch, but that, before the accident happened, he did not consider it dangerous; he also said "I didn't think it would ever go over." What he had ascertained is what the record shows the city must be considered as having known, and from that it is clear the city had no notice of either of the alleged defects.

The case against the added defendant, Reinhold, fails for the same reason. The barrier was constructed by an independent contractor; Reinhold, therefore, was responsible only for such defects which he knew of or which a reasonable inspection would have disclosed. See *First Presbyterian Congregation v. Smith,* 163 Pa. 561, 576, 30 A. 279; *Vendig v. Union League,* 291 Pa. 536, 140 A. 503; Restatement, Torts, section 412.

On the other hand, if it were assumed, contrary to Mr. Corrier's experience, that the appearance of the pillar sufficiently disclosed a defect to put the city and Reinhold on notice that in some way the pillar might

be pulled down by the weight placed on the top chain by plaintiff and his companions, the probability of that result must be taken to have been just as observable by the plaintiff: compare *Landis v. Philadelphia*, 295 Pa. 227, 145 A. 124; *Malone v. Union Paving Co.*, 306 Pa. 111, 116, 159 A. 21. The barrier did not present itself to the plaintiff as a plaything; as one of his companions testified, they were not "babies, we don't play around such things."

Contributory negligence is defined in the Restatement, Torts, section 463, as "conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and which is a legally contributing cause, coöperating with the negligence of the defendant in bringing about the plaintiff's harm." The plaintiff had reached an age at which the law casts on him "the burden of showing his personal want of intelligence, prudence, foresight, or strength usual in those of such age."[3] It was not necessary to sit on the chains, and it was obvious to boys of their age and intelligence that the chains were not placed there as seats. On the undisputed facts put in evidence by the plaintiff, his contributory negligence became a matter of law: cf. *Rice v. Kring*, 310 Pa. 550, 556, 165 A. 833.

The judgments are reversed and are here entered for the respective defendants.

---

[3] *Kehler v. Schwenk*, 144 Pa. 348, 359, 22 A. 910.