# Hall *v.* Rine, Appellant.

*Road law—Construction of road—Diversion of water—Injuries to land—Evidence.*

Where supervisors in good faith and in the exercise of reasonable discretion, in repairing a road, close artificial water breaks made by previous supervisors, and construct side ditches so as to conduct the surface water falling upon and draining onto the road, to a natural depression toward which the land naturally inclined, a land owner owning the land covered by the depression cannot recover damages from the township for injuries to his property, if it appears that the work done by the supervisors did not precipitate upon his land a large body of water which did not naturally flow upon it.

Where there are no streams and no defined water courses, but the flow is over the surface of a field or fields, a large discretion is vested in supervisors as to the most practicable and efficient method of disposing of it to the end that the roadbed may be protected from washing.

Argued March 8, 1915. Appeal, No. 12, March T., 1915, by defendant, from judgment of C. P. Snyder Co., Feb. T., 1913, No. 52, on verdict for plaintiffs in case of Minnie M. Hall and Sallie E. Hall Frantz v. Wm. B. Rine, et al., Supervisors of Chapman Township, Snyder Co. Before RICE, P. J., ORLADY, HEAD, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Trespass for injuries to land. Before JOHNSON, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $309. Defendant appealed.

*Error assigned,* among others, was in refusing defendant's motion for judgment n. o. v.

*Andrew A. Leiser,* with him *Jay G. Weiser,* for appellants.—Township officers in repairing a highway may construct drains and culverts within the limits of the highway; and if the surface water, after flowing in them for some distance, turns upon the land of an adjoining owner, no action at law lies for the injury thereby occasioned: Lorah v. Amity Twp., 35 Pa. Superior Ct. 529; Snively v. Washington Twp., 218 Pa. 249; Martin v. Riddle, 26 Pa. 415; Allentown v. Kramer, 73 Pa. 406; Torrey v. Scranton City, 133 Pa. 173; Strauss v. Allentown, 215 Pa. 96.

*M. L. Potter* and *C. P. Ulrich,* for appellees.—The case was for the jury: Meixell v. Morgan, 149 Pa. 415; Rhoads v. Davidheiser, 133 Pa. 226; Bohan v. Avoca Borough, 154 Pa. 404; Torrey v. Scranton City, 133 Pa. 173; Taylor v. Canton Twp., 30 Pa. Superior Ct. 305; Martin v. Riddle, 26 Pa. 415; Dean v. New Millford Twp., 5 W. & S. 545.

OPINION BY HENDERSON, J., July 21, 1915:

The plaintiffs charged the defendants as supervisors of Chapman Township with having "unlawfully, negligently and even maliciously" diverted water from a public highway on to the plaintiff's land, to their prejudice. A highway known as the Meiserville Road is located on the face of a hill side and extends from the River Road to the top of the hill. The plaintiffs' buildings are on the River Road at the end of and close to the Meiserville Road. The River Road is a "State Road." The Meiserville Road is under the control of the supervisors of the township. It was in bad condition in 1912, and had been so for a long time. Water from the upper side of the road had been flowing down the middle of the road and so washing the traveled track as to make

it unfit for convenient use.   Numerous water breaks had existed on the road for a considerable time, presumably to divert the water from the upper to the lower side of the road.   The plaintiffs owned the land on the northwest side of the road with the exception of a small triangle belonging to J. S. Rine who also owned land on the southeast side of the road, immediately north of the plaintiffs' land.   The plaintiffs' land on the southeast side of the Meiserville Road is in a depression which extends northwardly to J. S. Rine's land and the ground where the buildings are situated is lower than the State Road and the Meiserville Road where the latter connects with the State Road.   The drainage both from the westerly and easterly sides of the Meiserville Road is into this depression or ravine.   No streams or water courses lead from the upper to the lower side of the road, the only drainage being that of rain water falling on the hillside above the road.   The supervisors proceeded to repair the road in accordance with general instructions issued by the State highway commissioner pursuant to the provisions of paragraph nine of the Act of June 8, 1907, and paragraph one of the Act of May 13, 1909, which instructions included direction to open ditches along the sides of the road of sufficient capacity to carry off the water likely to be therein at times of greatest flow; also to construct the road with such a crown that there would be drainage from the surface of the road into the side ditches; also, to remove water breaks and take surface water from one side of the road to the other, where necessary, by culverts or pipes of capacity adequate to the maximum amount of water to be taken care of.   Ditches were formed at the sides of the road; the driveway was filled in and crowned and the water taken off the road by a water break which turned the water onto the land of J. S. Rine near the north line of the plaintiffs' land.   The effect of this change was, as claimed by the plaintiffs, that in June, 1912, and at subsequent times a large quantity of

earth was washed down the ravine onto the plaintiff's premises damaging the spring, the cellar of the house, the yard, the garden and the orchard, and it is for this injury that damages are sought. The position taken by the plaintiffs is that the water flowing from their land on the north side of the road down the hillside should' not be diverted by the gutters in the road but should be permitted to flow over the land of J. S.. Rine and .thus be so distributed over the surface as that it would not produce a flood in the hollow. A quotation from the testimony of George Hall, a son of one of the plaintiffs, exhibits the plaintiffs' view of the situation: "Q. What is the cause of this water gathering up here now and throwing itself on these people since 1912, when it did not do that before? A. Because of those two channels on either side of the road and the breakers being taken out. Q. Explain why that would change it. A. I believe I did. It would leave the water go down in a volume and the other way it was distributed over the fields." There is a concurrence of evidence on the part of the plaintiffs and the defendants that the natural course of the water is down the slope into the ravine and thence onto the premises of the plaintiffs in the vicinity of the house. If the Meiserville Road were not on the hillside the water flowing down would find its way to the river through this depression or ravine The board of supervisors had control of the repair of the road, and the evidence is that the work done left it in a better condition than it had ever been before. They determined on the method of taking the water from the road and provided for a discharge of water from the road at a place in the Rine field. In so doing they were performing a public duty and the presumption is that this was done in good faith and in the exercise of their best judgment. It was charged in the statement of claim that the plaintiffs acted maliciously, but this branch of the complaint was withdrawn from the consideration of the jury by the court. The burden is

on the plaintiffs, therefore, to show that the defendants acted without authority of law in making the improvement as set forth in the testimony.    The evidence does not show nor is it claimed that any natural water course was crossed in constructing the ditches on the road. That the water could not be permitted to flow across the road on the hillside is obvious.    The location of the highway there necessarily involved the construction of ditches for the proper maintenance of the roadway and the Act of 1836, P. L. 566, invests the supervisors with authority to enter upon any lands adjoining the highway and cut, open, maintain and repair all such drains or ditches through the same as they shall judge necessary to carry the water from the roads.    This authority coupled with the obligation imposed on them by sec. 6 of the same act to keep the highway in repair and clear of all impediments to easy and convenient passing and traveling protects the township from liability for the acts of the supervisors done in good faith and in the exercise of a reasonable discretion.    Where water is turned from the road in a suitable place and along a grade or course over which it naturally flows the township is not liable for the consequences of such an exercise of discretion.    Certainly not unless it be made to appear that the plan adopted is clearly unreasonable and unjustifiable.    It is undoubtedly true that the supervisors are not authorized to divert a stream from its usual course and discharge it onto the land of an adjoining owner at a place where it was not accustomed to flow; or to carry water a long distance along the highway across natural outlets and accumulate it in large quantities in such a way and at such a place as to do damage to such owner.    But where there are no streams and no defined water courses but the flow is over the surface of a field or fields a large discretion is vested in supervisors as to the most practicable and efficient method of disposing of it to the end that the roadbed may be protected from washing.    The water

breaks on the road, fifteen or more in number, twelve of them above the plaintiff's orchard did not create natural water courses nor did their presence in the highway impose on the defendant board of supervisors the obligation to maintain them. Such dams across the road might or might not be sufficient to take all the water off the road. In the present case the uncontradicted evidence was that they were not sufficient; that much water ran down the middle of the road. But whether sufficient or not it was for the supervisors to determine whether such obstructions to travel were necessary or convenient. The plan adopted by the highway department excluded such obstructions from good road building and in view of this plan and the character of the obstruction both to travel and the flow of water it cannot be held that the supervisors in the present case abused their discretion or acted in a lawless manner in leveling them and constructing the roadside ditches. The water must be taken from the upper side of the road by a ditch on that side or by carrying it to the lower side. Both plans were adopted. Part of the water was taken across the road near the north line of the plaintiffs' orchard and part of it flowed down to the River Road at the foot of the hill. The plaintiffs' evidence does not disclose any practicable plan by which the water could be disposed of at reasonable cost in such a way as to do no damage to the plaintiffs and at the same time permit the maintenance of the roadbed as built. The learned trial judge in those parts of the charge set forth in the fifth, sixth, seventh and eighth assignments of error was evidently under the impression that the supervisors constructed the ditches across natural depressions, water-courses or drains and that there was evidence that the surface water of a large territory which did not naturally flow in that direction was gathered in a body and precipitated onto the plaintiffs' premises and carried past natural water courses and drains which then existed, but we do not

find that this impression is supported by the evidence. The water breaks were put there for the very purpose of creating artificial depressions or channels across the road to provide for the flow of water. It does not appear from the evidence that there were depressions there at the time the road was constructed. No obligation rested on the supervisors to maintain the water breaks in order that the water might be discharged at many places from the road side. The evidence tends to show that two causes contributed to the injury of which the plaintiffs complained. One was that more water was taken from the road because of the drainage of the ditches and the filling up of the hollow in the middle of the road and the occurrence of exceptionally heavy rains in June and at later periods that season. But these are conditions to which the plaintiff's property was subject by reason of its locality with reference to the slopes and grades and its elevation as compared with the contiguous highways. All of the water on the southwest hillside naturally flowed into the ravine and thence through the plaintiffs' premises, and we are not convinced from anything presented in the testimony that there was evidence from which the jury was justified in finding that the township was liable for any negligence of its supervisors in the construction of the road. The defendants were therefore entitled to an affirmance of the sixteenth point as set forth in the first assignment of error.

The judgment is reversed.