## Schmeidel v. Dauphin Borough School District

*Rhoads, Sinon & Reader*, for plaintiffs.

*Metzger, Wickersham & Knauss*, for defendants.

KREIDER, J., December 27, 1956.—Plaintiffs filed their complaint in equity praying that this court issue an injunction enjoining and restraining defendants, their servants, agents and employes from remaining and continuing in possession of plaintiffs' property and from trespassing thereon. The pleadings consist of plaintiffs' complaint and amended complaint, defendants' answers thereto, a stipulation and an additional stipulation as to all the facts.

## Question Involved

Plaintiffs and defendants agree that the sole question to be decided is whether a joint school board has power and authority to condemn plaintiffs' private property for public school purposes.

## The Facts

The parties having stipulated all the facts in this case, we adopt the same and incorporate them herein by reference, together with a certain "Condemnation Resolution" set forth herein. We shall refer, however, to such facts as we deem necessary in the disposition of the case.

Plaintiffs are the owners of a certain tract of land consisting of .29 of an acre, more or less, in Swatara Township, Dauphin County, which defendants entered upon and took possession of and occupied under a purported power of eminent domain by virtue of a condemnation resolution adopted September 25, 1956.[1]

[1] "CONDEMNATION RESOLUTION

"WHEREAS, the demands of the School Districts comprising the Central Dauphin Joint School Board require the purchase of an additional parcel of land in Swatara Township, Dauphin County, Pennsylvania, in connection with the remodeling and alteration of the Swatara Junior High School Building located in the

This tract is a part of plaintiffs' premises which adjoin the land upon which the Swatara Junior High School Building is presently located in the village of Oberlin, Dauphin County. Defendants are the school districts of the Boroughs of Dauphin, Penbrook and Paxtang, the school districts of the Townships of Lower Paxton,

---

Village of Oberlin, Pennsylvania, in order to furnish the best possible school facilities and opportunities for the said School Districts; and

"WHEREAS, Central Dauphin Joint School Board cannot agree with Paul W. Schmiedel and Anna M. Schmiedel, his wife, owners, on the terms of the purchase price of said real estate selected by Central Dauphin Joint School Board for the purpose of improving and bettering the tract of land upon which the Swatara Junior High School Building is now located, after having made an offer to purchase the same, as a result of which the Central Dauphin Joint School Board has entered upon, taken possession of, occupied and marked the boundary lines of the said vacant lands, being a lot of ground situated on the eastern side of High Street, Village of Oberlin, Swatara Township, Dauphin County, Pennsylvania, at the southeast corner of said High Street and a ten (10) feet wide unnamed alley; and

"WHEREAS, the Central Dauphin Joint School Board and the owners aforesaid cannot agree on the terms of the purchase price of said land, it becomes necessary to condemn the same in order to secure a good title and fix the damage for said taking.

"NOW THEREFORE, be it resolved that the Board of School Directors of the School Districts of Lower Paxton Township, West Hanover Township, Middle Paxton Township, and Swatara Township, and of the Boroughs of Dauphin, Penbrook, and Paxtang, having entered upon, taken possession of, occupied and marked the following described real estate for use in connection with and in addition to the plot upon which the Swatara Junior High School building is erected, they do hereby jointly and severally condemn in the name of the several School Districts aforesaid, the same for school purposes and in pursuance thereof do hereby mark the boundary lines of said property as follows:

"All those certain lots of ground situate in Swatara Township, Dauphin County, Pennsylvania, more particularly bounded and described as follows, to wit: . . . Containing 0.29 more or less acres. . . .

West Hanover, Middle Paxton and Swatara, and the Central Dauphin Joint School Board. These seven school districts formed the Central Dauphin Joint School Board by Articles of Agreement dated June 19, 1950, under the provisions of article XVII, sec. 1701 et seq., of the Public School Code of March 10, 1949, P. L. 30, 24 PS §17-1701 et seq. On October 8, 1956, pursuant to said resolution, the Central Dauphin Joint School Board, by D. M. Cresswell, President, "acting for and on behalf of the school districts of the Townships of Lower Paxton, West Hanover, Middle Paxton and Swatara and for the school districts of the Boroughs of Penbrook, Dauphin and Paxtang," petitioned this court to appoint a board of viewers "to ascertain and award just compensation to all persons for their property so condemned and appropriated. . . ." Whereupon, on October 9, 1956, the court appointed said board of viewers, as prayed for.

### Plaintiffs' Contentions

Plaintiffs contend that:

1. A joint school board has no authority in law to condemn private property for public school purposes.

---

"BE IT FURTHER RESOLVED that the proper officers of the Central Dauphin Joint School Board are hereby directed to institute said Condemnation Proceedings in the Court of Common Pleas of Dauphin County, Pennsylvania, for and in the names of the seven School Districts aforesaid pursuant to Public School Code of 1949 as amended and in pursuance of law, in order to properly consummate the same for the purposes hereinbefore recited.

"I do hereby certify that the foregoing Resolution was adopted at a meeting of Central Dauphin Joint School Board by a vote of the majority of the Membership of each of the School Boards comprising the Central Dauphin Joint School Board and by a majority of the total membership of the Central Dauphin Joint School Board, held on the 25th day of September, 1956, at Central Dauphin High School building.

(Signed)   Elias H. Phillips, Secretary,
Central Dauphin Joint School Board."

2. Assuming arguendo a joint school board to have authority in law to condemn private property, the authority conferring such power does not provide for just compensation being first made or secured and such authority is therefore unconstitutional.

### Statutory Provisions

The pertinent statutory provisions of the Pennsylvania Public School Code of March 10, 1949, P. L. 30, 24 PS §7-703, relating to the condemnation of property by school boards and the powers vested in joint school boards are as follows:

Section 508. (Purchasing or condemning land) Majority vote required: 24 PS §5-508.

"The affirmative vote of a majority of all the members of the board of school directors in every school district, duly recorded, showing how each member voted, shall be required in order to take action on the following subjects: . . .

"Purchasing, selling, or condemning land. . . .": As last amended, September 28, 1951, P. L. 1546.

Section 703. Acquisition of sites for school buildings and playgrounds, and disposing thereof: 24 PS §7-703.

". . . the board of school directors of each district is hereby vested with the necessary power and authority to acquire, in the name of the district, by purchase, lease, gift, devise, agreement, condemnation, or otherwise, any and all such real estate, either vacant or occupied, . . . as the board of school directors may deem necessary to furnish suitable sites for proper school purposes for said district or to enlarge the grounds of any school property held by such district, . . ."

Section 721. Condemnation of land: 24 PS §7-721.

"Whenever the board of school directors of any district cannot agree on the terms of its purchase with

the owner or owners of any real estate that the board has selected for school purposes, such board of school directors, after having decided upon the amount and location thereof, may enter upon, take possession of, and occupy such land as it may have selected for school purposes, whether vacant or occupied, and designate and mark the boundary lines thereof, and thereafter may use the same for school purposes according to the provisions of this act: . . ."

Section 722. Security for damages; fee simple title: 24 PS §7-722.

"The school funds which may be raised by taxation in any school district shall be pledged, and hereby are made security, to the owner or owners of any property taken for school purposes, for all damages they may sustain on account of taking of such property by the district for school purposes.

"The title to all real estate acquired by any school district by condemnation proceedings shall be vested in such school district in fee simple."

Section 1701. Joint schools and departments; establishment: 24 PS §17-1701.

"The board of school directors in any two or more school districts may, with the approval of the county board of school directors and of the Department of Public Instruction, establish, construct, equip, furnish, and maintain joint elementary public schools, high schools, consolidated schools or any other kind of schools or departments provided for in this act. The cost of establishing, constructing, equipping, furnishing, and maintaining such joint schools or departments, including the cost of transportation of pupils, shall be paid by the several districts establishing the same, in such manner and in such proportion as they may agree upon. . . .": As amended July 27, 1953, P. L. 629, sec. 12.

Section 1702. Raising funds: 24 PS §17-1702.

"Any school district joining in the establishment of a joint school or department, as herein provided, shall have the same power to raise the necessary funds to pay its share of establishing and maintaining such joint school or department as it has to raise funds to establish and maintain any public school."

Section 1704. Joint authority of boards; title to property: 24 PS §17-1704.

"The affairs of joint schools or departments shall be supervised and directed (1) jointly by the several boards of school directors, establishing and maintaining such joint schools or departments, or (2) by a joint school committee, as provided in section one thousand seven hundred seven of this act. When there is no joint school committee, the several boards of school directors are hereby authorized to meet jointly, and exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts. Whatever matter is required by law to be decided by a vote of the majority of all the directors of a school district shall in a joint school or department be required to be decided by a vote of two-thirds of all the constituent boards comprising said joint operation. The vote of any constituent board shall be determined by a majority vote of all the school directors comprising such constituent board. In addition thereto, the matter shall have been voted for by a majority of all the school directors of all of the constituent boards. The title to any real estate, acquired for the purpose of establishing any such joint school or department, shall be held in the name of one or more of the districts establishing the same, as they may agree": As amended June 28, 1951, P. L. 934, sec. 1.

### Discussion

We turn now to the first contention of plaintiff, viz., that "a joint school board has no authority to condemn

land for public school purposes." It should be noted at the outset that plaintiffs' land was condemned by the seven defendant school districts in conjunction with the "Central Dauphin Joint School Board". The condemnation resolution, although reciting in its second "whereas" paragraph that "the Central Dauphin Joint School Board has entered upon, taken possession of, occupied and marked the boundary lines of the said vacant lands, . . . " nevertheless provides:

"NOW THEREFORE, be it resolved that the Board of School Directors of the School Districts of Lower Paxton Township, West Hanover Township, Middle Paxton Township, and Swatara Township, and of the Boroughs of Dauphin, Penbrook, and Paxtang, having entered upon, taken possession of, occupied and marked the following described real estate for use in connection with and in addition to the plot upon which the Swatara Junior High School building is erected, they do hereby jointly and severally condemn in the name of the several school districts aforesaid, the same for school purposes and in pursuance thereof do hereby mark the boundary lines of said property as follows: . . ."

Thus it appears that the seven defendant school districts which comprise the Central Dauphin Joint School Board took title in their names as required by section 1704 of the Public School Code of 1949, as amended by the Act of June 28, 1951, P. L. 934, sec. 1, 24 PS §17-1704. Furthermore, the petition to the court for the appointment of a board of viewers was presented by the president of the joint school board specifically acting on behalf of the seven named school districts comprising said joint board.

The gist of plaintiffs' argument that a joint school board has no authority to condemn private property for public school purposes is that the legislature has given no specific authorization to a joint board to con-

demn land; therefore it must be inferred that the legislature intended to withhold the power of condemnation, that the powers granted to the board under sections 1704 and 1707 by the Public School Code are limited to mere supervision, maintenance and regulation, that the language of section 1704 providing that "the title to any real estate, acquired for the purpose of establishing any such joint school or department, shall be held in the name of one or more of the districts establishing the same, as they may agree," indicates that the legislature did not intend a joint school board to hold title to any real estate and that if this be so, it must follow that the legislature did not intend to grant to a joint school board the power to take title to real estate by eminent domain proceedings. Plaintiffs cite no case in support of their theory but rely on an excerpt from Walker's Appeal, 332 Pa. 488, at page 492 (1938), in which Mr. Chief Justice Kephart observed for the court that:

". . . For successful operation of these joint schools it is provided that the old districts' control be transferred to a joint board, with joint though separate control in the districts. This new organization is a distinct separate legal entity from each of the district boards which make it up. . . ."

In the Walker case it was held that after the formation of a joint district, a school teacher in the joint district could be employed only by a majority vote of the members of each of the separate districts, sitting jointly in control of the affairs of the joint district, as was specifically provided in section 1805 of the Public School Code of May 18, 1911, P. L. 309, as amended, then in effect. We think the Walker decision is not applicable in the instant case where plaintiffs cite it in support of their contention that the joint school board, being "a distinct separate legal entity", has no power to condemn land because the Public

School Code does not say so specifically. In Commonwealth ex rel. v. Clemens, 283 Pa. 246, 248 (1925), the Supreme Court in a per curiam opinion said:

". . . but after the boards have severally acted and the agreement or contract for the joint school is entered into, then their members are authorized to meet together, and, as a united body, 'exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts.' "

In the instant case seven school boards jointly, each by a majority vote of its members, voted in favor of the condemnation resolution. This would appear to be the kind of action which the Supreme Court said in Walker's Appeal, supra, was "joint though separate control in the districts."

Section 508 provides that the affirmative vote of *a majority* of all the members of the board of school directors shall be required in order to take action on "Purchasing, selling or *condemning land.*" Section 1704 requires that: "*Whatever matter* is required by law to be decided by a vote of *the majority* of all the directors of a school district shall in *a joint school* or department be required to be decided by a vote of two-thirds of all the constituent boards comprising said joint operation", and section 1707 (applicable where the boards of school directors establishing a joint school agree that a *Joint School Committee* may supervise and direct its affairs) provides that: "The affirmative vote of a majority of all the members of this committee . . . shall be required in order to take action upon those subjects *enumerated in section five hundred eight of this act.*"

Although there is a joint school committee in the Central Dauphin Joint School System, the articles of agreement between the several boards reserve unto the joint school board the matters relating to the purchase or condemnation of sites for buildings, as set

forth in the additional stipulation. Consequently, the matter of condemnation is properly within the scope of the joint school board under section 1704 of the Public School Code, as amended, which provides:

". . . When there is no joint school committee, the several boards of school directors are hereby authorized to meet jointly, and exercise the same power and authority over the same (referring to the affairs of joint schools) as the several boards exercise over the schools in their respective districts. . . ."

In Hunlock Township School District v. Northwest Joint School District of Luzerne County, 380 Pa. 464 (1955), the Supreme Court, speaking through Mr. Justice Jones, affirmed the decree entered by President Judge Valentine which approved the purchase of a school site by a joint school district after a favorable vote of two-thirds of all the constituent school boards of the joint district and a majority vote of all the school directors of all the constituent boards of the district. The Supreme Court cited with approval the passage heretofore quoted from Walker's Appeal.

Plaintiffs contend that the Hunlock case is not applicable because in that case a *purchase* rather than a condemnation of real estate was involved. On this point the language of President Judge Sherwood in Mundis v. Southeastern Joint School District, 72 D. & C. 612 (1949), is pertinent:

". . . To construe the Act to mean that a joint school board is limited in the acquisition of land for school purposes to *purchase* alone would lead to a ridiculous conclusion in which land owners could demand *exorbitant prices* and thus defeat the power of joint school boards to establish joint schools." (Italics supplied.)

In Spann v. Joint Boards of School Directors, 381 Pa. 338 (1955), plaintiffs brought an action in equity to restrain the condemnation of property. The lower

court in an opinion by Judge Morgan H. Sohn of Beaver County dismissed the proceeding and on appeal the Supreme Court affirmed. While the contentions raised in the instant case were not present in the Spann case, the latter, nevertheless, is authority for the acquisition of land through condemnation proceedings, instituted by a joint school board.

One of the early cases on this subject is Hardy v. Marple-Newtown Joint High School District, 31 Del. Co. 112 (1941). In an opinion by Judge Ervin of Delaware County (now a member of the Superior Court of Pennsylvania) it was held that the directors of a joint high school district have power to acquire land to establish a joint high school by purchase or condemnation, that the directors of such joint high school district as a united body may exercise the same power and authority over the joint district as the several boards exercise over the schools in their respective districts and that the specific power granted by the Public School Code to the directors of a joint high school district to establish, construct, equip, furnish and maintain a joint high school, *includes the implied power* to do all things necessary to accomplish the objects of the main power specifically given. To the same effect is Mundis v. Southeastern Joint School District, 72 D. & C. 612 (1949), supra, where President Judge Sherwood cited with approval Judge Ervin's decision in the Hardy case and held that while statutes giving the right of eminent domain must be strictly construed, such powers may be implied and that a grant of power to accomplish any particular enterprise, especially one of a public nature, carries with it the authority to do all that is necessary to accomplish the principal object and that defendant joint school district was an entity which has the power to take private property by eminent domain.

We are of the opinion that what the individual school board may lawfully do, may be done by two or more boards acting as a joint school board and, "as a united body, 'exercise the same power and authority over the same as the several boards exercise over the schools in their respective districts' ": Commonwealth ex rel. v. Clemens, supra.

In the instant case it is conceded that the seven school boards meeting jointly, each by a majority vote of its members, voted in favor of the condemnation resolution. It is inconceivable that the legislature would create joint school systems and empower the joint school board to conduct the affairs of the joint school system, but withhold the right to condemn private property for necessary school purposes. Consequently, we hold that the Central Dauphin Joint School Board has the implied power to condemn plaintiffs' property for public school purposes. For other cases sustaining implied power to condemn private property for public purposes, see Erie R. R. Co. v. Public Service Commission, 271 Pa. 409; Schmidt v. Allegheny County, 303 Pa. 560.

Plaintiffs' second and final contention is that even if a joint school board has authority to condemn private property, the authority granting said power does not provide for just compensation being first made or secured and it is therefore unconstitutional. They argue that the Public School Code of 1949, as amended, does not specify a procedure for condemnation by a joint school board, that there is no requirement that a bond be filed or that moneys be paid into court, that the provisions of section 722 pledging the taxing power of an individual school district as the security for property taken by eminent domain does not apply to a joint school board. They say that it must be conceded a joint school board has no power of taxation and, being a distinct legal entity separate and apart

from the school district of which it is composed, an aggrieved land owner must look to the condemnor, the joint school board, for compensation, and that there could be no recourse against the individual school districts inasmuch as such school districts did not condemn the land. Plaintiffs contend, therefore, that there is no provision whatsoever guaranteeing just compensation for the land condemned by a joint school board and that the purported authority conferring such power of condemnation must be declared to be in violation of the Constitution of Pennsylvania. We think these contentions cannot prevail and that the Supreme Court has decided flatly against them in Spann v. Joint Boards of School Directors, supra. That case, as above noted, involved the *condemnation* of land by a joint board of school directors. The court, speaking through Mr. Justice Chidsey, said, at page 350:

"With respect to the payment of compensation for the damages caused by the taking, the particular manner or source of payment is not appellants' concern; it is a matter for determination by the school district alone. If the Authority financing should prove abortive, *plaintiffs would still be afforded protection under Section 722 of the Public School Code of 1949 which makes school* funds raised by taxation security for the price to be paid. . . ." (Italics supplied.)

We believe that the taxing authority of each of the several districts in a joint school system is pledged for the payment of damages which may be awarded as the result of a condemnation resolution passed by a joint school board. Section 1702 of the Public School Code, as heretofore pointed out, provides:

"Any school district joining in the establishment of a joint school or department, as herein provided, shall have the same power to raise the necessary funds to pay its share of establishing and maintaining such

joint school or department as it has to raise funds to establish and maintain any public school."

We think this section emphasizes the fact that the legislature intended to pledge the taxing power of each of the several school districts comprising a jointure as security for any action taken by the joint school board to establish or maintain the joint school. Section 1703 further amplifies section 1701 by requiring that *no joint school shall be established* unless the several districts intending to establish the same shall *first* enter into a written agreement among themselves setting forth the manner and proportion in which they will share the expense of establishing and maintaining a joint school.

For the foregoing reasons we make the following

### Conclusions of Law

1. The Central Dauphin Joint School Board, defendant, has the power and authority to condemn the private property of plaintiffs for public school purposes.

2. The school districts of the boroughs of Dauphin, Penbrook and Paxtang, and school districts of the Townships of Lower Paxton, West Hanover, Middle Paxton and Swatara, and the Central Dauphin Joint School Board, defendants, have not unlawfully entered upon, occupied and possessed the land of plaintiffs.

3. Plaintiffs are not entitled to equitable relief and their complaint in equity should be dismissed.

### Decree Nisi

And now, December 27, 1956, it is ordered, adjudged and decreed that plaintiffs' complaint in equity is dismissed at the cost of plaintiffs.

The prothonotary is directed to enter this decree nisi and to give notice thereof forthwith to all parties of record or their counsel. If no exceptions are filed thereto within 20 days after the entry of this decree, a final decree shall be entered as of course.