J. S08020/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| DONALD LEE FRY, | : | No. 698 WDA 2016 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence, December 14, 2015,
in the Court of Common Pleas of McKean County
Criminal Division at No. CP-42-CR-0000435-2014

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., AND SOLANO, J.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED MARCH 07, 2017**

Donald Lee Fry appeals from the judgment of sentence of December 14, 2015, following his conviction of one count of driving under the influence ("DUI") -- general impairment[1] and related summary offenses. After careful review, we affirm the convictions but vacate appellant's sentence for DUI and remand for resentencing.

At a non-jury trial on October 28, 2015, before the Honorable John H. Pavlock, the Commonwealth adduced the following evidence. Trooper Jeffrey Walker of the Pennsylvania State Police testified that on April 12, 2014, he was conducting routine patrol and "running radar" at the intersection of State Route 219 and Route 6, "just south of Lantz Corner."

---

[1] 75 Pa.C.S.A. § 3802(a)(1).

(Notes of testimony, 10/28/15 at 5, 8.) At 7:22 p.m., Trooper Walker observed appellant's white Pontiac Grand Prix traveling north on Route 219 at a "very high rate of speed." (*Id.* at 8, 11.) Trooper Walker activated his radar unit which showed appellant to be traveling at 109 miles per hour in a 55-mile-per-hour zone. (*Id.* at 8, 11.) At that time, Trooper Walker pulled out onto the highway, activated his emergency lights, and effectuated a traffic stop. (*Id.* at 12.) Trooper Walker testified that appellant pulled over approximately one-half mile down the road. (*Id.*)

Immediately upon approaching the driver's side window of the vehicle, Trooper Walker detected a strong odor of an alcoholic beverage coming from appellant's breath. (*Id.* at 13.) Appellant had glassy, bloodshot, and watery eyes, and slurred speech. (*Id.* at 14.) Appellant was fumbling for his documents and had to be asked twice for his vehicle registration card. (*Id.* at 14, 54.) Appellant was laughing, which Trooper Walker found to be unusual. (*Id.* at 14.) Trooper Walker asked appellant if he had been drinking, and appellant responded that he had consumed 2 or 3 beers. (*Id.* at 15.)

Appellant failed field sobriety tests and was placed under arrest for suspicion of DUI. (*Id.* at 35.) Trooper Walker transported appellant to Kane Community Hospital for a blood draw; however, after being given his implied consent warnings, appellant refused blood testing. (*Id.* at 35-36.)

Appellant signed the DL-26 form[2] indicating his refusal. (**Id.** at 36-37; Commonwealth's Exhibit 3.)

At the conclusion of trial, appellant argued that the Commonwealth had failed to establish jurisdiction in McKean County. (**Id.** at 87.) The trial court rejected this argument, taking judicial notice of the fact that the intersection where appellant was stopped is in McKean County:

> The first thing I'm going to address is the jurisdiction issue. I have to decide the case based on what's in the record.
>
> As far as towns and places and are they in McKean County or not, that -- that's a tough issue because I wasn't asked to take judicial notice. However, based on all the facts, the trooper testified he was stationed in this county, that this incident happened south of Lantz Corner, but more importantly just south of the Barracks. So there's sufficient evidence to establish jurisdiction.
>
> It is an issue though that wouldn't be an issue if it was this happened in McKean County. But that -- that wasn't in the record. However, I find that there's sufficient evidence in the record to demonstrate that this alleged crime occurred in McKean County, so I'm denying the request to dismiss the case based on a jurisdiction issue.

**Id.** at 109-110.

---

[2] The DL–26 form contains warnings of the potential consequences of a person's refusal to consent to a blood test, including that the individual's license could be suspended for at least one year, and that if convicted of violating 75 Pa.C.S.A. § 3802(a), the individual will face more severe penalties because of the refusal.

The trial court found appellant guilty of count 1, DUI, as well as the summary offenses listed in counts 2, 3, and 4.[3] (*Id.* at 116-117; docket #15.) On December 14, 2015, appellant was sentenced to 20 days' to 6 months' incarceration for DUI pursuant to 75 Pa.C.S.A. § 3804(c)(1).[4] Appellant received fines on the summary offenses. (Docket #13.) A timely post-sentence motion was filed on December 21, 2015, and denied on April 19, 2016, following a hearing. A timely notice of appeal was filed on May 11, 2016. On May 23, 2016, appellant was ordered to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) within 21 days; appellant timely complied on June 10, 2016. On June 13, 2016, the trial court filed a Rule 1925(a) opinion, relying on its opinion and order of April 19, 2016, denying appellant's post-sentence motion. (Docket #6.)

---

[3] 75 Pa.C.S.A. §§ 3362(a)(2) (maximum speed limits), 3714(a) (careless driving), and 3736(a) (reckless driving), respectively.

[4]
> **(c) Incapacity; highest blood alcohol; controlled substances.--**An individual who violates section 3802(a)(1) and refused testing of blood or breath or an individual who violates section 3802(c) or (d) shall be sentenced as follows:
>
> (1) For a first offense, to:
>
> > (i) undergo imprisonment of not less than 72 consecutive hours[.]

75 Pa.C.S.A. § 3804(c)(1).

Appellant has raised the following issues for this court's review:

I.      Should judgement of sentence be reversed by operation of law under the circumstances of this case because the Commonwealth failed to present sufficient evidence in the record that appellant drove in McKean County, the Commonwealth only establishing that the stop occurred "just south of" a known intersection which is extremely close to the next county?

II.     Should the case be remanded for resentencing in light of the fact that the arresting officer did not receive and execute a search warrant before demanding that appellant submit to a blood test?

Appellant's brief at 5 (capitalization omitted).

In his first issue on appeal, appellant claims that the Commonwealth failed to present sufficient evidence of where the offense occurred to establish jurisdiction. We disagree.

> A court has no jurisdiction over an offense unless the offense occurred within the county in which the trial takes place. *Commonwealth v. Thomas*, 305 Pa.Super. 158, 451 A.2d 470 (1982). The burden to establish the court's jurisdiction is on the Commonwealth. *Commonwealth ex rel. Chatary v. Nailon*, 416 Pa. 280, 285, 206 A.2d 43 (1965).

*Commonwealth v. Sestina*, 546 A.2d 109, 112 (Pa.Super. 1988), *appeal denied*, 554 A.2d 508 (Pa. 1989).

> "The doctrine of judicial notice is intended to avoid the necessity for the formal introduction of evidence in certain cases when there is no real need for it, where a fact is so well established as to be a matter of common knowledge." *Albert Appeal*, 372 Pa. 13, 20, 92 A.2d 663, 666 (1952); *See Commonwealth ex rel. Duff v. Keenan*, 347 Pa.

> 574, 582-83, 33 A.2d 244, 249 (1943) ("so well known as to be incontestable."). Included in the subjects appropriate for judicial notice is the county in which a town or city is located, *[s]ee Emert v. Larami Corp.*, 414 Pa. 396, 200 A.2d 901 (1964); *Commonwealth v. Kaiser*, 184 Pa. 493, 39 A. 299 (1898), and the location of roads and highways. *See Schmidt v. Allegheny County*, 303 Pa. 560, 154 A. 803 (1931); *Commonwealth v. Ball*, 277 Pa. 301, 121 A. 191 (1923).

*Commonwealth v. Varner*, 401 A.2d 1235, 1236 (Pa.Super. 1979).

In *Varner*, the offense occurred in the parking lot of the Shippensburg Fair Grounds and on Possum Hollow Road near the Fair Grounds. *Id.* While the appellant never alerted the prosecution that the county of the offense was in issue, he argued on post-trial motions and on appeal that Shippensburg is near the border of Cumberland and Franklin counties and that the prosecution never specifically established that the *situs* of the offense was in Franklin County. *Id.* at 1235-1236. This court held that the trial court did not err in taking judicial notice that the offense occurred in Franklin County where the locality of the offense was only technically in issue. *Id.* at 1236. In overruling post-trial motions, the trial court took judicial notice that "it is a well-known geographical fact that" the area near the Fair Grounds where the appellant was arrested is in Franklin County. *Id.* at 1235. *See also Sestina*, 546 A.2d at 112 (where the Commonwealth established a specific street and intersection location, the trial court would have been entitled to take judicial notice of the fact that the site of the offense was in Warren County).

Here, Trooper Walker testified that he was situated "just south" of the intersection of State Route 219 and Route 6 when he clocked appellant's vehicle at 109 miles per hour. (Notes of testimony, 10/28/15 at 8.) There does not appear to be any dispute that the intersection of State Route 219 and Route 6 is in McKean County, and the trial court took judicial notice of this fact. (Trial court opinion, 4/19/16 at 1.) Furthermore, Trooper Walker testified that appellant's vehicle came to a stop approximately one-half mile after Trooper Walker pulled out and activated his emergency equipment. (Notes of testimony, 10/28/15 at 12.) Trooper Walker also testified that appellant's vehicle came to a sudden stop, pulling quickly onto the berm of the highway. (*Id.* at 51-52.) The trial court took judicial notice of the fact that the McKean County/Elk County line is approximately 6 miles south of the intersection of State Route 219 and Route 6. (Trial court opinion, 4/19/16 at 1-2.) This was sufficient to establish that the crime occurred in McKean County, and therefore, the trial court had jurisdiction.

We now turn to appellant's second issue on appeal. Appellant basically argues that his sentence was illegal under the recent United States Supreme Court case of *Birchfield v. North Dakota*, ___ U.S. ___, 136 S.Ct. 2160 (2016), which invalidates any criminal sanction assessed for refusing to take a blood test. We are constrained to agree.

Initially, we note that appellant did not raise this issue in the court below; in post-sentence motions and in his Rule 1925(b) statement, he only

challenged jurisdiction. The Commonwealth contends that the issue is waived on this basis. (Commonwealth's brief at 8.) However, the issue goes to the legality of appellant's sentence, which is non-waivable. *See Commonwealth v. Barnes*, ___ A.3d ___, 2016 WL 7449232 at *5 (Pa. Dec. 28, 2016) ("[W]here the mandatory minimum sentencing authority on which the sentencing court relied is rendered void on its face, and no separate mandatory authority supported the sentence, any sentence entered under such purported authority is an illegal sentence for issue preservation purposes on direct appeal."); *Commonwealth v. Foster*, 17 A.3d 332, 345 (Pa. 2011) (plurality) ("[W]here a sentencing court is required to impose a mandatory minimum sentence, and that mandatory minimum sentence affects a trial court's traditional sentencing authority or the General Assembly's intent in fashioning punishment for criminal conduct, a defendant's challenge thereto sounds in legality of sentence and is therefore nonwaivable."). *See also Commonwealth v. Edrington*, 780 A.2d 721, 723 (Pa.Super. 2001), citing *Commonwealth v. Vasquez*, 744 A.2d 1280 (Pa. 2000) (application of a mandatory sentencing provision implicates the legality of the sentence, not the discretionary aspects of the sentence).

In addition, *Birchfield* was decided on June 23, 2016, after appellant's sentence but during the pendency of the instant appeal. Where a United States Supreme Court decision "results in a 'new rule,' that rule applies to all criminal cases still pending on direct review." *Schriro v.*

***Summerlin***, 542 U.S. 348, 351 (2004).  The Commonwealth cites case law for the proposition that in order for a new rule to apply retroactively to a case pending on direct appeal, the issue had to be preserved at all stages of litigation up to and including the direct appeal.  (Commonwealth's brief at 8, citing ***Commonwealth v. Tilley***, 780 A.2d 649 (Pa. 2001); ***Commonwealth v. Cabeza***, 469 A.2d 146 (Pa. 1983).)  ***See also*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal.").  However, the Pennsylvania Supreme Court in ***Barnes*** made clear that "an exception to the issue-preservation requirement exists where the challenge is one implicating the legality of the appellant's sentence."  ***Barnes***, 2016 WL 7449232 at *3, citing ***Commonwealth v. Dickson***, 918 A.2d 95, 99 (Pa. 2007).  Therefore, the matter is not waived, and appellant is entitled to retroactive benefit of the new rule.

In ***Birchfield***, as in this case, the defendant refused a blood test after being read his implied consent warnings.  He was advised that his refusal to undergo blood alcohol content ("BAC") testing would expose him to criminal penalties.  ***Birchfield***, 136 S.Ct. at 2170.  Birchfield pled guilty to a misdemeanor violation of the North Dakota refusal statute, but argued that the Fourth Amendment prohibited criminalizing his refusal to submit to the test.  ***Id.*** at 2170-2171.  The United States Supreme Court agreed and

reversed Birchfield's conviction, holding that a State may not criminalize a motorist's refusal to comply with a demand to submit to blood testing.

The **Birchfield** Court distinguished between breath and blood tests, the latter of which it found to be significantly more intrusive. **Id.** at 2184. The Court determined that with regard to blood tests, the police must either seek a warrant or show exigent circumstances. **Id.** The Court in **Birchfield** also rejected the argument that warrantless blood tests are justified based on the driver's legally implied consent to submit to them:

> Our prior opinions have referred approvingly to the general concept of implied-consent laws that impose civil penalties and evidentiary consequences on motorists who refuse to comply. Petitioners do not question the constitutionality of those laws, and nothing we say here should be read to cast doubt on them.
>
> It is another matter, however, for a State not only to insist upon an intrusive blood test, but also to impose criminal penalties on the refusal to submit to such a test. There must be a limit to the consequences to which motorists may be deemed to have consented by virtue of a decision to drive on public roads.

**Id.** at 2185 (citations omitted).

Appellant cannot be subject to enhanced criminal penalties for refusal to submit to a blood test. **See also Commonwealth v. Giron**, ___ A.3d ___, 2017 WL 410267 (Pa.Super. filed Jan. 31, 2017) ("[P]ursuant to **Birchfield**, in the absence of a warrant or exigent circumstances justifying a search, a defendant who refuses to provide a blood sample when requested

by police is not subject to the enhanced penalties provided in 75 Pa.C.S.A. §§ 3803-3804." (footnote omitted)); **Commonwealth v. Evans**, ___ A.3d ___, 2016 WL 7369120 at *8 (Pa.Super. Dec. 20, 2016) (vacating the judgment of sentence and remanding for a re-evaluation of the appellant's purported consent where the appellant only consented to the warrantless blood draw after being informed, by the police, that refusal to submit to the test could result in enhanced criminal penalties, in violation of **Birchfield**).[5] Therefore, it is necessary to remand for resentencing without consideration of the mandatory minimum sentence in Section 3804(c)(1)(i).

---

[5] The Supreme Court in **Birchfield** consolidated three separate cases, one of which was petitioner Steve Michael Beylund's case. After Beylund's arrest for DUI, the officer informed him of North Dakota's implied consent advisory and that "test refusal in these circumstances is itself a crime." **Birchfield**, 136 S.Ct. at 2172. Beylund then agreed to the requested blood draw, and testing revealed a BAC of 0.250%, more than three times the legal limit. **Id.** Beylund appealed, principally arguing that his consent to the blood test was coerced by the officer's warning that refusing to consent would itself be a crime. The North Dakota Supreme Court found that Beylund's consent was valid, emphasizing that North Dakota's implied consent advisory was not misleading because it truthfully related the penalties for refusal. The **Birchfield** Court rejected this rationale:

> The North Dakota Supreme Court held that Beylund's consent was voluntary on the erroneous assumption that the State could permissibly compel both blood and breath tests. Because voluntariness of consent to a search must be determined from the totality of all the circumstances, we leave it to the state court on remand to reevaluate Beylund's consent given the partial inaccuracy of the officer's advisory.

**Id.** at 2186 (citation and quotation marks omitted).

Judgment of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/7/2017